Held *v.* American Hotel Realty Corporation, Appellant.

Argued June 1, 1954. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harold W. Helfrich,* with him *Donald L. LaBarre,* for appellant.

*Laurence H. Eldredge,* with him *Morris Efron* and *Robert E. Haas,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 28, 1954:

On August 20, 1952, Mrs. Annie Held, 75 years of age, set out from her home to make arrangements for the perpetual care of the grave which she expected in the not too distant future to occupy. The office receiving payments for this "perpetual care" was located in the B. & B. Building on Hamilton Street in Allentown, Pennsylvania. Two doors pierced the side of the building. One, the regular entrance, opened into the lobby which gave access to the elevators; the other opened into a steep stairway to the basement below. Almost as if in a fateful acceleration of the somber event for which she was making full preparations, Mrs. Held entered into the wrong door, fell down the unguarded steps and suffered a broken neck. Serious as was the injury, she recovered and, with her husband, brought suit against the owners of the building, charging them with negligence.

The two doors were separated by a space of 30 inches of wall on which appeared the sign "Entrance" accompanied by a brief arrow pointing to the door to the right. The distance between the pronged head of the arrow and its tail was so short that a quick glance would not tell the average eye in which direction it was pointing. Moreover, when the basement door was open, which it was on the day of the accident, the lettering and the arrow disappeared behind its overlapping wooden panels.

No sign informed people that the basement door was not the entrance to the building, nor were visitors warned to stay away from the basement door. No landing topped the cellar stairway. Thus, one entering the basement door, assuming that it was a regular build-

ing entrance would normally carry his foot farther forward than the total width of the top step (11½ inches) with the result that his advanced foot would press down on empty air and he would inevitably topple or tumble down the precipitate stairway. Almost as if to assist the unwary pedestrian into this sudden descent, no artificial light illuminated the top of the stairway.

Mrs. Held arrived at the B. & B. Building at about 3 p.m. on the day of the accident. It is a common experience that one entering from bright sunshine into a room not specially lighted will find his vision momentarily impaired and the most normal objects will assume a hazy, misty shape somewhat removed from reality. Thus, when Mrs. Held passed from the summer afternoon brightness into the unlighted doorway she entered into a dimmed enclosure which completely obscured the treacherous steps beneath her feet. She had not visited this building for a year and a half prior to the accident so that she could not be charged as a matter of law with recent knowledge of the twin door arrangement which proved her undoing.

Was the defendant corporation negligent in the maintenance of the B. & B. Building? Were the doors involved in the accident so placed that a reasonably prudent person using ordinary care could be deceived into believing that the door which housed the precipitous steps was a normal entrance to the building?

The jury answered these questions in the affirmative and returned verdicts in favor of Mrs. Held and her husband. The learned court below refused to grant judgments n.o.v. moved for by the defendant corporation and this appeal followed.

We are satisfied that the decision of the court below was correct: "Where a store, office building, or similar business establishment to which the public is

impliedly invited to resort has a door leading to a cellar, elevator shaft, or other dangerous place, which is left unfastened, and which from its location and appearance may be mistaken for a door which a member of the public on the premises is entitled to use, the proprietor is liable to a person who by mistake passes through that door and is injured." (20 A.L.R. Ann. 1147)

The proprietor of a business building is answerable in law if he maintains two identically-looking entrances one of which is safe and the other unsafe, and, because of that identity in appearance, a business visitor is injured. It is not for the visitor to guess which entrance is safe. If one of the entrances plunges perpendicularly into a cellar instead of leading horizontally to a ground floor level, the building proprietor is liable for resulting injuries unless suitable warnings have been posted informing the visitor of the accelerated and unintended destination to which the wrong door leads.

As far back as 1890, this Court approved the verdict of a jury based upon facts not unsimilar to those in the case at bar. (*Clopp v. Mear*, 134 Pa. 203). The defendants there maintained a store with two entrances, one intended for customers and the other equipped with a hatchway just inside the door. ". . . both entrances were externally alike, as to size, shape, appearance, etc., and about equally inviting to any one, not familiar with the premises, wishing to enter the store . . . . The plaintiff and her friend, passing the store, saw in the window an article which one of them wished to purchase. Mrs. Clopp opened the southerly door, and, taking the entering step to the store, plunged headlong into the cellar, about twelve feet in depth. . ."

This Court approved of the charge of the Trial Judge who said to the jury: "Was it their [the defend-

ants'] duty to put a watch there, to caution people against going in there when the hatchway was open? Or, to keep the door locked when the hatchway was open, so people could not walk in there and walk into a hole to death or dismemberment? Now, I leave all the evidence to you which relates to that subject, and you are to find whether this accident was caused by the defendants' negligence."

On the possibility of contributory negligence, the Trial Judge there charged: "Now was Mrs. Clopp guilty of any negligence? That depends upon whether there was anything there which would naturally warn her that it was an unsafe door to go in at. Was there any sign, or anything in the appearance of the door, which would operate as a caution to a person of ordinary prudence not to enter there? Unless there was some indication to put her upon her guard not to enter there, she had a right to enter."

As in the *Clopp* case the questions involved in the case at bar were submitted to the jury and we can find nothing in the record which would suggest the Trial Court was in error in doing so. Certainly the facts cannot convict Mrs. Held of contributory negligence as a matter of law. A business visitor entering a normal looking door, which could reasonably be regarded as a safe entrance to a building, is not required to approach it with suspicion and advance with a cautious, experimental step when there is nothing to warn him that the door is anything other than what it purports to be, a normal building entrance.

Judgment affirmed.