Clewell, Appellant, *v.* Pummer.

516

Argued January 6, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO, and ARNOLD, JJ.

Laurence H. Eldredge, with him William M. Power and Paul A. McGinley, for appellants.

Frederick E. Smith and Sidney L. Wickenhaver, with them Robert L. Trescher, C. William Freed, Ross & Smith, and Montgomery, McCracken, Walker & Rhoads, for appellees.

OPINION BY MR. JUSTICE MUSMANNO, March 13, 1956:

The California House in Bucks County near Quakertown is a three-story country hotel with many of the limitations associated with that type of hostelry. It is without elevators or outside illumination but it does have a bar on the first floor. On the night of June 2, 1951, the plaintiffs in this case, Harry Clewell and Helen Clewell, his wife, called to visit Mr. and Mrs. Raymond M. Schaffer (Raymond Schaffer is brother to Mrs. Clewell), who lived in an apartment on the third floor. They entered the establishment through the barroom whose lights directed attention to the door which opened into that part of the hotel. A second outside door led into a center hall accommodating a staircase with steps climbing to the second and third floors.

After visiting with the Schaffers for several hours the Clewells started down the steps which conducted to the second floor to a point opposite an outside door which gave out on to the slanting roof of a porch. Believing that they had reached the first floor, Mrs. Clewell opened the door, which was unlocked, and stepped out, plunging to the ground beneath, dragging with her her husband whose hand she was holding.

Mrs. Clewell's head struck the bumper of an automobile parked below, with resultant fractures of the skull. She also sustained fractures of the vertebra and numerous other injuries of a serious character. Mr. Clewell suffered injuries of his own.

In the ensuing trespass action against Frank and Minnie Pummer, the proprietors of the hotel, Harry and Helen Clewell recovered verdicts in the sums of $5,000 and $28,700, respectively, which verdicts were reversed by the Court of Common Pleas of Bucks County on the basis that the plaintiffs were guilty of contributory negligence as a matter of law. This appeal followed.

Photographs introduced at the trial depict the door through which the plaintiffs fell as one that could readily be mistaken as a ground floor exit. Its upper half was panelled in glass and covered with a lace curtain. It had the same general appearance as both outside doors on the first floor. There was no suggestion that this door might have been the entrance to another apartment or to a rest room. Its dress was specifically that of an outside door.

The steps coming down from the third to the second floor could easily convey the idea to the casual visitor that they were aiming at the curtain-covered door as a passageway to a first floor egress. The anemic glimmer from the feeble 15-watt bulb in the ceiling above shed no light on the true situation. There was nothing about the door, so far as the record shows, which would rebut the natural conclusion that it was a normal outlet from the building. The only question on this appeal is whether or not the plaintiffs should have known that they were in reality on the second floor, which knowledge should have vetoed their sensory perception that they had arrived at the ground level.

The lower Court, having reversed on contributory negligence, regarded the question of defendants' negligence as moot. In view of the disposition we will make of the appeal we find it necessary to pass on the question of negligence as well as contributory negligence. In *Held v. American Hotel Realty Corp.*, 378 Pa. 196, 198, we quoted with approval the following: " 'Where a store, office building, or a similar business establishment to which the public is impliedly invited to resort has a door leading to a cellar, elevator shaft, or other dangerous place, which is left unfastened, and which from its location and appearance may be mistaken for a door which a member of the public on the premises is entitled to use, the proprietor is liable to a person who by mistake passes through that door and is injured.' " (20 A.L.R. Ann. 1147.)

In that case the front of the building had two doors, one leading into the lobby and the other opening into the cellar with precipitous but inconspicuous steps. The plaintiff fell down those steps. In affirming the plaintiff's verdict we said: "The proprietor of a business building is answerable in law if he maintains two identically-looking entrances one of which is safe and the other unsafe, and, because of that identity in appearance, a business visitor is injured. It is not for the visitor to guess which entrance is safe. If one of the entrances plunges perpendicularly into a cellar instead of leading horizontally to a ground floor level, the building proprietor is liable for resulting injuries unless suitable warnings have been posted informing the visitor of the accelerated and unintended destination to which the wrong door leads."

In the case at bar every rule of caution and care dictated the need for either keeping the roof door locked or posting it with a notice that it was not a proper exit from the building. No one could doubt

the negligence of a business proprietor who would house a vicious dog in a room neither locked nor suitably posted, into which an unwary visitor walked to his injury, under the erroneous impression, as here, that the door led to the ground floor outside. The potential injuries which follow precipitation into empty air from a second floor roof are certainly no less grievous than those which would result from the attack of a dog.

The negligence of the proprietor is even greater if it appears that there was no need to keep the dangerous dog in the room having an unmarked and unlocked door. While entitled to use his premises as he sees fit, a proprietor has less chance escaping liability in accident cases if the dangerous area he controls has little or no utilitarian value: "Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done." Restatement, Torts §291 (1). Stated in other language, this principle is firmly settled in jurisprudence: Any act which subjects an innocent person to an unnecessary risk is a negligent act if the risk outweighs the advantage accruing to the actor. It cannot be doubted in this case that the roof door constituted a risk of considerable magnitude. One of the previous tenants of the building, a Mrs. Gross, testified that Mrs. Pummer, the co-owner, warned her not to use the door because "we would fall off the roof." With the risk incontrovertibly established, we turn to the advantage accruing to the proprietors. What was it? It seems that the only use to which the door was put was to afford Mrs. Pummer a place to shake out her mop. But Mrs. Pummer could have shaken her mop from a window or even more appropriately into a bucket. At any

rate, there was no excuse for leaving this door unlocked at 1:30 in the morning. The hour for shaking out mops would certainly have passed before that time. It would be no strain on credulity to surmise that a jury could find that a second story door that opens into the empty night might foreshadow harm more readily than utility.

*Clopp v. Mear*, 134 Pa. 203, is one of the early cases on the subject of dangerous double doors. There the plaintiff fell into the cellar through a hatchway which resembled a proper door at its side. The former bore no warning sign. In affirming the verdict returned for the plaintiff, this Court said: "In view of the evidence, this was not only a clear case for submission to the jury, but it was scarcely possible for them to come to any other conclusion than that the defendants were chargeable with negligence, in leaving the hatchway open and unguarded and thereby causing the serious injury that was sustained by the plaintiff."

We conclude in this case that the question of negligence was also one for the jury, and find, after reading the record in the light most favorable to the verdict-winner, as we are required to do, that the jury was warranted in reaching the conclusion that the defendants were negligent.

Now we come to the real question in the appeal: Were the plaintiffs guilty of contributory negligence as a matter of law? The lower Court declared that the plaintiffs were "chargeable with knowledge that they were still on the second floor when they decided to go out of the door in question." That the plaintiffs did *not* know they were on the second floor is scarcely debatable because it can be taken for granted that they were not trying to reach the ground via the second story roof. The query presents itself: Should they have known?

The plaintiffs had never visited the premises before. They arrived at the hotel on the night of June 2, 1951, between 9 and 9:30 p.m. They entered through the door of the barroom, the illumination from which cast a glow on the outside porch. Some 15 minutes later they ascended to the third floor with Mrs. Schaffer, as her husband had not yet returned from his employment. A few minutes later they descended to the barroom to await the coming of Mr. Schaffer who arrived at 11:45 p.m. At midnight the four of them returned to the third floor apartment where they talked and drank coffee until 1:30 a.m., when the plaintiffs took their departure. The defendants stress the fact that the plaintiffs passed the roof door three times before the tragic plunge, but there was no audible or visual sign to acquaint them with the fact that the door opened on to a roof.

It is to be noted also that on each occasion the plaintiffs traversed the distance between the first and third floors they were with company. Mr. Schaffer was Mrs. Clewell's brother. His wife was therefore the sister-in-law to both Mr. and Mrs. Clewell. They had not been together for some time. They had much to say in "talking about old times," an ever nostalgic favorite of the genus homo, and it is not unlikely that the exchange of personal intimacies invaded to some extent their perceptive faculties as they mounted and descended the stairs. The explanation of their inattentiveness does not outrightly exonerate them of blame but it throws the whole chain of events into the realm of the phenomena of common man, strictly within the province of the jury to evaluate. It is for the jury to decide in given instances whether the actual present conditions are so similar to a commonly experienced situation that a traveler may excusably be deceived

into believing he has traveled through two floors instead of one.

There is yet another factor of significance in the reconstruction of events which led to the disastrous fall from the roof top. When the Schaffers first moved to the California House they occupied apartments on the second floor and communicated this fact to the plaintiffs. To what extent this knowledge lingered in the subconscious mind of the plaintiffs and in some way influenced them into believing they were descending from the second floor to the first floor on the night of the mishap was also for the jury to consider, in connection with all the other fortuitous elements in the case. Sometimes the memory of a past fact, which has become embedded in the subconscious mind for months or years, can even cancel out a current impression, especially when that impression is colored by circumstances of a deluding character. As stated by Chief Justice MAXEY in the case of *Mogren v. Gadonas*, 358 Pa. 507, 512, "In passing on questions of negligence, courts and juries must consider the *realities of the situation*. The standard of carefulness is the conduct under like circumstances of an average reasonable person possessed of ordinary prudence." (Emphasis supplied).

To say that the plaintiffs here were guilty of contributory negligence as a matter of law is to say that no two reasonable persons could agree that what the plaintiffs did was an understandable error which could befall any reasonably prudent person. Such an assertion cannot survive the test of the authorities. In the *Mogren* case, we said: "For a court to be justified in declaring a person contributorily negligent as a matter of law, evidence of such negligence must be so clear and unmistakable that no reasonable basis remains for

an inference to the contrary. Murphy v. Bernheim & Sons, Inc., 327 Pa. 285, 194 A. 194. 'It is an established principle that if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of either party in the trial of a case, the question must be left to the jury . . . . A verdict should not be directed if on all the facts and circumstances there is room for fair and sensible men to differ in their conclusions or, as it is sometimes stated, [if] the evidence is not such that honest minds could reach but one conclusion': 26 R.C.L. 1067-69, section 75 . . . The pivotal question, therefore, is: Would sensible minds differ as to whether or not plaintiff acted as a reasonably prudent person would act under the same circumstances?''

In support of its decision, the lower Court cites *Bailey v. Alexander Realty Co.*, 342 Pa. 362, where the plaintiff entered into an elevator shaft, assuming that the elevator was at his floor level because the elevator door was open. But the set of facts in that case are not analogous to those before us here. An elevator shaft, by its very ominous and tenebrous abyss, warns travelers to beware, but a conventional door proclaims no such danger. On the contrary, with waiting knob and expectant hinges, it practically invites entrance. Although judgment n.o.v. was entered in the *Bailey* case, this Court did say: "If in semi-darkness he uses his sense of sight as carefully as he can and reasonably believes he can 'see his way' and if his sense of sight deceives him, he may or may not be guilty of negligence and the question will be for the jury."

If sense of sight may, under certain circumstances, so deceive a person that the deception will excuse him from legally declared contributory negligence, a lapse of memory, in an unusual setting to be appraised by

the jury, may also save him from a nonsuit or judgment n.o.v. The learned Court below finds no palliation of fault in the plaintiffs' failure to remember that they had descended from the third floor and that, therefore, having travelled but one flight, they could still only be on the second floor. The test in cases of this kind, however, is not what a man should remember but what a reasonably prudent man ordinarily remembers. The standards of recollection are not based on the accomplishments of memory experts or "mind-reading" television performers, but on the actualities of everyday life. While a person is charged with remembering what is necessary to his safety, it is for the jury to decide in a proved state of facts whether the tracings of recollection have been wiped away by the force of a situation created by those responsible for the dangerous instrumentality involved.

Although a person is held accountable for the integrity of his perceptions, those perceptions are to be screened on the brain of the normal man and not one endowed with extraordinary faculties. The law even makes allowances, where proper, for erroneous perceptions: "The word 'perception' includes the actor's knowledge of the actual circumstances surrounding him and *also his erroneous but reasonable belief in the existence of non-existent circumstances.*" Restatement, Torts, §289, comment d. (Emphasis supplied.)

If the plaintiffs had visited the hotel some time during the day when the hallway door was open and they had seen the perilous roof over which the hall opening dangled, they could well have been legally negligent in seeking to use that opening at night. Or if in proceeding in one direction on the stairs they had noted a broken tread which they failed to observe on the return trip, they could also have been held accountable

in law for their carelessness. However, the facts here paint another picture.

The defendants would convict the plaintiffs of contributory negligence for not having made a note of the second floor as they passed it prior to the trip which resulted in the accident. But there was no reason why the plaintiffs should have attached any importance to the second floor and therefore no reason why they should have remembered it. The average person ascending or descending the stairs in the California House would be guided not by a mental recordation of the number of steps his feet touched but by what his senses communicated to his brain. The appointments of this hostelry were not such as would make any unusual impression on the mind of the average visitor concerned only with reaching his destination in entering or leaving the place. There was nothing in the drab monotony of floors, walls and furniture to vividly set apart one level of the building from any other.

Where responsibility is based on mental reaction to physical facts, the decision as to whether the doer has erred in law or not depends to some extent on the immediate past of the doer and the manner in which the physical happenings confront him. It is here that the genius of the American jury system most efficaciously and dramatically displays itself. Twelve persons of average education and experience with varying occupational background arrive at a common understanding as to how the average person should or would have comported himself in the situation, keeping in mind *all* the facts, conditions and circumstances in the case.

The lower Court saw in the facts in the case of *Dively v. Penn-Pittsburgh Corp.*, 332 Pa. 65, where we allowed a recovery, some distinguishing features from

the case at bar, but there the plaintiff was also injured when she plunged through an open trap door which was neither lighted nor posted. We said: "Nor, under the conditions of insufficient light furnished in the alcove, should a court declare that she was guilty of contributory negligence because she failed to observe the proper door, especially as it was not marked by any appropriate sign: Clopp v. Mear, 134 Pa. 203. Seeing the opening at the side of the screen, she could reasonably assume that it was the appropriate means for reaching her destination: Restatement, Torts, section 343, comment b. True, had she ventured to walk in the darkness behind the screen, such conduct might have been negligent, but her fall resulted from the first step she made as she rounded it and not from any attempt to venture across an unlit, unfamiliar area."

The plaintiffs here came to grief not from wandering around in the dark but from the first step they made through the portal they had reason to believe was a normal means of exit.

The writer of the Opinion of the Court en banc finds much fault with the plaintiffs for proceeding ahead in darkness, but even if they had actually been on the first floor they would still have had to advance in the darkness. Darkness around a country hotel at 1:30 in the morning is as much to be expected as the fresh air for which it is reputed both night and day. The lower Court suggests further that the plaintiffs should have used a "probing toe" but from what their senses told them there was nothing to be probed. They knew they were entering into darkness as much as the householder is aware that when, without a bed lamp, he switches off the light on the wall, he must make his way to his bed by a sense of general direction. To assume the plaintiffs should have probed is to assume they had some suspicion they were on the second floor. The

whole case rests on the proposition that they had every reason to advance tranquilly into the night, assured that they had reached the ground level. Whether the location, shape and general conformation of the door, the dim lighting in the hallway, the lack of warning signs, and the hour of the night all conspired to deceive the plaintiffs into an understandable and acceptable error of calculation was for the jury to decide.

In the case of *Mogren v. Gadonas*, 358 Pa. 507, the plaintiff entered a darkened room which she believed to be the "ladies room," and fell through an unguarded hole in the floor. Entering a compulsory nonsuit against the plaintiff, the trial Court there said " '. . . the plaintiff has established that she was guilty of contributory negligence so clear and so plain that just minds couldn't differ on it, that she intentionally walked into a room that was in total darkness, took a chance as to what she would meet in this room. So, since she didn't use a reasonable degree of care, she stepped into a room, in total darkness, and was injured, that would be contributory negligence as a matter of law.' "

But in removing the nonsuit, we said: "To us it is clear that any prudent woman would have acted as Mrs. Morgan acted if confronted with the same necessity and in the same situation. In passing judgment on another's alleged want of care under certain circumstances, justice does not require a holding that the actor's foresight should have dictated that unusual degree of prudent conduct whose erstwhile necessity in order to avoid the mishap is now so clear to the judge's hindsight."

In the case of *James v. Smith*, 93 Pa. Superior Ct. 485, the Superior Court affirmed a verdict for the plaintiff who was injured when he fell in a darkened stairway to which he had been directed. Disposing of the question of contributory negligence, the Superior

Court said: "The question of the plaintiff's contributory negligence was very properly submitted to the jury. A moving picture was in progress. The plaintiff's evidence shows that the light was dim. He opened the door to which he was directed and in taking his first step fell into what proved to be to him a pitfall. He thought he saw a platform as he made his first move, but the construction of the stairway permitted the mistaken step. Evidence as to the condition of the light and the opportunity for observing the construction of the stairway was introduced and the jury was given an opportunity to pass on the question of the plaintiff's negligence."

Whether one is directed to his injury by the agent of the defendant or by physical properties which are owned, controlled and managed by the defendant, the responsibility is the same.

It is the decision of this Court that the plaintiffs were not guilty of contributory negligence as a matter of law and that the jury was warranted in reaching the conclusion that the plaintiffs were not guilty of contributory negligence as a matter of fact.

In the lower Court the defendants filed a motion for new trial which was not disposed of by the Court in view of its conclusion that the plaintiffs were barred from recovery because of culpable negligence. The defendants are entitled to have the lower Court pass on their motion for a new trial and, if dissatisfied with the Court's decision in that respect to re-appeal to this Court.

The judgments entered by the Court below are reversed and the record is remanded for action not inconsistent with this Opinion.

Mr. Justice BELL dissents.

Mr. Justice ALLEN M. STEARNE did not participate in the decision of this case.