## Freund, Appellant, *v.* Huster.

Argued November 12, 1959. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

*Cassin W. Craig,* with him *William W. Vogel,* and *Wisler, Pearlstine & Talone,* for appellant.

*C. Howard Harry,* for appellee.

OPINION BY MR. JUSTICE BELL, December 30, 1959:

This is an appeal from a judgment of nonsuit. In such a case the evidence must be considered in the light most favorable to plaintiff, and he must be given the benefit of every reasonable deduction or inference of fact arising therefrom. *Finnin v. Neubert*, 378 Pa. 40, 105 A. 2d 77; *Schofield v. King*, 388 Pa. 132, 130 A. 2d 93; *Seburn v. Luzerne & Carbon County M. T. Co.*, 394 Pa. 577, 148 A. 2d 534.

Moreover a nonsuit can be entered only in a clear case. *Gift v. Palmer*, 392 Pa. 628, 141 A. 2d 408; *Schofield v. King*, 388 Pa., supra; *Seburn v. Luzerne & Carbon County M. T. Co.*, 394 Pa., supra.

In the light of these principles we shall analyze the meager testimony. Plaintiff, as the administrator of the estate of his son, Valentin Karl Freund, instituted this suit in trespass against defendant who was the administrator of Fred W. Huster, the driver of the automobile involved, for damages under the wrongful death and survival Acts. The action arose from an automobile accident on April 14, 1954, at approximately 8:00 p.m. along Huntingdon Pike in Abington Township, Montgomery County.

Plaintiff's evidence of the accident was very meager. Fred Huster was driving; Karl Freund and Gretchen Walter (aged 15) who was the sole survivor were riding in the back seat. Gretchen testified (pertinently) as follows:

"Q. Can you tell us what happened as you recall it immediately before the collision? A. Well, you come to this road right after the Bethayres station called Welsh Road, and . . . at that time there was another car in front of us also, and Fred went to pass it and it was an open road and there wasn't any oncoming traffic, and every time he tried to get around it the car kind of speeded up, and every time we tried to get back into our own lane the car would slow down, and Karl

said: *'Step on it,'** and whether it was to get around the car faster or what it was for I don't really know . . . A. And I said: 'Slow down,' and it was within a matter of maybe one second after that the car went out of control. . . Q. Now why did you tell him to slow down? A. I guess because I just observed what was going to happen next. It was very clear what was going to happen. It was more or less an impulse that came out. It wasn't going to do any good. Q. When you say the car went out of control what did you observe, what happened? A. Well, it ran to the left hand side of the road, and I felt like I was in an automatic washing machine. That's what it felt like, and I guess that is out of control."

Defendant's convertible automobile first swung to the left side of the road and then back to the right side, and then ran off the road, knocking over a barbed wire fence with three cedar posts and into a concrete culvert. The automobile was literally wrecked.

Huntingdon Pike at the scene of the accident is straight; there are no nearby crossroads and the speed limit is 50 miles per hour. The surface is concrete, 19 feet in width, with two feet eight inch improved shoulders. It had been raining or drizzling shortly before the accident; the night was dark and *the road was wet.* The automobile went approximately 143 feet after veering off the road; there were no blow-outs on any of the tires, and the only evidence of speed was that Gretchen said defendant was driving "fast".

There is a presumption that both plaintiff, the passenger, and defendant, the driver, being dead, used due care, but such a presumption of due care can be overcome by evidence in the case which discloses a lack of due care: *Schofield v. King,* 388 Pa. 132, 135, 130 A. 2d 93; *Balla v. Sladek,* 381 Pa. 85, 112 A. 2d 156.

---

* Italics throughout, ours.

The only question is a narrow one: Does the evidence clearly show that Karl (the passenger in the rear seat) was guilty of contributory negligence as a matter of law? The lower Court in its opinion dismissing the motion to take off the nonsuit, said:

". . . The inference is irresistible that the convertible must have turned over at least once before it came to rest.

"The command: 'Step on it,' given by a passenger under the circumstances developed in the plaintiff's case, was a wanton and reckless utterance, as impending events so quickly and tragically proved by battered metal and broken bodies.

"When the teen-age passenger Karl expressly undertook to give the teen-age driver Fred instructions to 'Step on it,' while Fred was obviously engaged in some sort of a speed contest with another driver of an automobile, he (Karl) brought his conduct within the line of conduct condemned in Morningstar v. N. E. Penna. R.R. et al., 290 Pa. 14, and in Joseph v. Pitts. & W. V. Ry., 294 Pa. 315."

In *Ulmer v. Hamilton*, 383 Pa. 398, 119 A. 2d 266, the Court said (page 402): "In order to charge the plaintiff, therefore, as a matter of law, with contributory negligence, it must be shown that his conduct actually contributed to the negligent happening of the accident. This is the meaning of the phrase 'contributory negligence.'"

In *Goldschmidt v. Schumann*, 304 Pa. 172, 155 A. 297, the Court said (page 176); "'The test for contributory negligence is whether the act [alleged as] constituting the negligence contributed in any degree to the production of the injury. . . If it did there can be no recovery': Robinson v. American Ice Co., 292 Pa. 366, 369."; also: *Ulmer v. Hamilton*, 383 Pa., supra.

"A guest [in an automobile, even in the rear seat] will be held responsible for his action or failure to

act in the face of a danger of which he knew or where it can be reasonably inferred that he must have realized the peril." *Joseph v. Pitts. & W. V. Ry.,* 294 Pa., supra.

In *Morningstar v. N. E. Penna. R.R.,* 290 Pa., supra, the Court said (page 17) : ". . . Likewise the guest is held responsible when he permits the driver to travel at an excessive speed (Wagenbauer v. Schwinn, 285 Pa. 128), or upon the wrong side of the road: Renner v. Tone, 273 Pa. 10."

We deem it unnecessary to further review the negligence cases which are legion, as to the duty of a guest in an automobile.

Four important facts were, we believe, overlooked by the lower Court. First, the evidence does not disclose as a matter of law that Fred was engaged in some kind of a speed contest with the driver of the other automobile he was attempting to pass. It does not follow necessarily or as a matter of law that you are in a speed contest because you attempt to pass another automobile or slow down to return to your lane when you discover you cannot pass him. Second, driving "fast" and "stepping on it" is not per se evidence of unlawful speed, considering the evidence in the light most favorable to plaintiff. Third, there was no evidence that Fred did "Step on it"; and fourth, there is no evidence that "Stepping on it" was the real or proximate or contributing cause of Fred's losing control of the car and driving off the road. The night was dark, the road, we repeat, was wet, and we cannot say as a matter of law that Fred's speed or extra speed caused him to lose control of his car.

It will suffice to say that on the present record, it cannot be said as a matter of law that plaintiff acquiesced in or joined in testing a manifest or known danger, nor is it clear that his adjuration "Step on it"

658

actually contributed in any degree to the negligent happening of the accident.

The judgment of nonsuit is reversed with a procedendo.