342 A.2d 393

Moody J. BENSON, Appellant,

v.

PENN CENTRAL TRANSPORTATION COMPANY,
a corporation, et al.,

v.

FRANK O. SPEELMAN, INC., a corporation,
t/d/b/a Diamond Cab Company.

Supreme Court of Pennsylvania.

Argued March 11, 1975.

Decided July 7, 1975.

Rehearing Denied Aug. 15, 1975.

38

Paul E. Moses, Evans, Ivory & Evans, Pittsburgh, for appellant.

James P. McKenna, Jr., A. F. Mahler, Pittsburgh, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On April 9, 1969, appellant Moody Benson, a trainman employed by appellee Penn Central Transportation Co. (the railroad), reported for work at the railroad's Pitcairn, Pennsylvania, yard. The railroad assigned him to

a train awaiting its crew at the Conway, Pennsylvania, yard and arranged for appellant to be transported to the Conway yard in a taxicab owned by appellee Frank O. Speelman, Inc. (the cab company). En route, the taxicab collided with another automobile operated by Edward Blakely. Appellant sustained back injuries in this accident.

Appellant filed suit against the railroad and Blakely in the court of common pleas to recover damages for the injuries he sustained in the accident. He based his action against the railroad on the Federal Employers Liability Act, 45 U.S.C.A. §§ 51–60 (1972). The suit against Blakely was brought under Pennsylvania law. The railroad joined the cab company as an additional defendant pursuant to Pa.R.Civ.P. 2251–52, 12 P.S. Appendix.

The case was tried before a jury which returned a verdict in favor of the plaintiff against all the defendants in the amount of $23,900.00. The jury also found in favor of the railroad against the cab company in the same amount.

The cab company filed motions for judgment notwithstanding the verdict and for a new trial which were denied by the trial court. The railroad filed no post-verdict motions.

The cab company appealed the judgment to the Superior Court. The railroad did not file an appeal within 30 days after the entry of the order of the trial court as required by section 502 of the Appellate Court Jurisdiction Act.[1] However, 15 months after appellant entered judgment on the verdict the railroad petitioned the Superior Court for leave to file a late appeal which was granted. The Superior Court vacated the judgment against both the taxicab company and the railroad and remanded for a new trial as to liability.[2] Appellant petitioned this

1. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. V, § 502(a), 17 P.S. § 211.502(a) (Supp.1974).

2. 228 Pa.Super. 45, 323 A.2d 160 (1974).

Court for allowance of appeal, which we granted.[3] We reverse the Superior Court's order as to the railroad and affirm as to the cab company.

## I.

In its instructions, the court charged the jury that it could find the railroad liable for appellant's injuries if it concluded that the railroad could have foreseen that injury to appellant was "likely" if the vehicle in which he was transported was not equipped with seatbelts and that the injuries sustained were caused by their absence.[4] The Superior Court held that this instruction was erroneous because "Penn Central by engaging the services of a reputable, regulated and certified common carrier exhibited sound judgment and to permit a jury to determine under these circumstances that Penn Central failed to furnish a safe place for the [appellant] to work was error requiring a new trial." 228 Pa.Super. at 49, 323 A. 2d at 162.

Appellant urges that we reverse the Superior Court's determination because 1) the instruction was proper and 2) the Superior Court was without authority to allow the railroad to file this late appeal.

We do not reach either of appellant's contentions because the railroad, by failing to file post-verdict motions, did not adequately preserve for appeal its claim of error.[5] We have repeatedly held that where a claim of error is not properly preserved for review, an appellate court must not consider that claim on appeal.[6] The

3. See Appellate Court Jurisdiction Act of 1970, § 204(a), 17 P.S. § 211.204(a) (Supp.1974).

4. The complete charge is quoted in part II of this opinion.

5. The railroad does not contend that federal law rather than Pennsylvania appellate procedure governs. Cf., e. g., *Missouri v. Mayfield*, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950).

6. See *Glass v. Freeman*, 430 Pa. 21, 31–32, 240 A.2d 825, 831 (1968); cf. *Dinio v. Goshorn*, 437 Pa. 224, 270 A.2d 203 (1969). See also, e. g., *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255,

Superior Court, by reversing appellant's judgment against the railroad on the basis of grounds not preserved for review, exceeded its proper appellate function.

■■ Although appellant did not raise in this or the Superior Court the railroad's failure to preserve its claim, we are not foreclosed from reversing on this ground the Superior Court's decision. We insist that issues are to be properly preserved for appellate review both to assure a correct disposition of the merits and to conserve judicial resources. See *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 258–59, 322 A.2d 114, 116–17 (1974).[7] That appellant has failed to raise this issue does not bar us from insisting that intermediate appellate courts and parties comply with the requirements for presentation and preservation of claims of er-

---

322 A.2d 114 (1974); *Wenzel v. Morris Distributing Co.*, 439 Pa. 364, 373–74, 266 A.2d 662, 667 (1970); *Corabi v. Curtis Publishing Co.*, 437 Pa. 143, 150, 262 A.2d 665, 668 (1970).

7. In *Dilliplaine*, supra, we outlined some of the considerations that warrant an appellate court's refusal to consider issues not presented to the trial court.

> "Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions."

Id. at 258–59, 322 A.2d at 116–17 (footnotes omitted).

While in *Dilliplaine* we were addressing failure to object to elements of the court's charge to the jury, most of these considerations also apply to failure to enter post-verdict motions.

ror we established to assure an orderly judicial process.[8] For this reason, we have previously held that the Superior Court erred by deciding a case on the basis of an issue not presented to it even though the appellant did not urge us to reverse on that ground. See *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975).

Because the railroad presented to the trial court no grounds for judgment notwithstanding the verdict or for a new trial, any grounds that could have been so presented were not preserved for appellate review and there was therefore no basis upon which the Superior Court could have granted relief. For this reason, we reverse the Superior Court's order granting the railroad a new trial and reinstate the judgment in favor of appellant.

## II.

■ The cab company did, however, properly preserve its claims. It is therefore to the merits of its assignments of error that we now turn.[9]

The cab company maintains that the trial court's instructions to the jury subjected it to liability for the neg-

8. We are well aware of the dangers of sua sponte consideration of issues not presented by the parties. See *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975). However, in civil cases, the lack of argument and brief will not seriously impede the Court in its consideration of whether an issue was properly preserved for review. In civil cases, determining whether a party has followed all the procedural steps necessary to preserve a claim is a relatively mechanical task involving merely an examination of the record to determine whether an objection was timely filed and properly preserved in post-verdict motions.

9. Because the cab company was not a common carrier by railroad, the appellant's case against the cab company is governed by Pennsylvania Law. See 45 U.S.C.A. § 52 (1972). Similarly, because the outcome of the action brought by the railroad against the cab company for indemnity will not adversely affect the remedy provided by Congress in the FELA, it too is governed by Pennsylvania Law. See *Fort Worth & D. Ry. v. Threadgill,* 228 F.2d 307 (5th Cir. 1955); cf. *Dice v. Akron, C. & Y. R. R.,* 342 U. S. 359, 72 S.Ct. 312, 96 L.Ed.2d 398 (1952); see also *Wallis v. Pan American Petro. Corp.,* 385 U.S. 363, 86 S.Ct. 1301, 76 L.Ed.2d 369 (1966).

ligence of the railroad. We agree and therefore reverse the judgment as to the cab company.

To understand the company's claim it is necessary to examine the relationship between two instructions given by the trial court.[10] The court gave the jury the following instructions on "primary" and "secondary" liability for injuries sustained in the accident.

"[I]f you were to find the Penn Central legally liable to Mr. Benson in the case, you would have to find a verdict over in their favor against the cab company in like amount, since you can see that it would be an incongruous situation if you were to say that the railroad had failed to provide a safe place to work in this case and thus found liable to Mr. Benson, and yet relieved the cab company, which had immediate command of the facility and the immediate command of the activity."

Immediately after giving that instruction, the court continued:

"Another point [for charge] submitted [by the plaintiff] is this: 'If you find that the railroad could have foreseen that injury in some form was likely to its employees because of the absence of seatbelts in a vehicle it caused to transport such employees in the course of their employment and that the absence of seatbelts was a cause, in whole or in part, of injury to the plaintiff, the railroad would be liable for such injuries and damages as the plaintiff sustained.' That would be true, and, of course, it would again be true that the railroad would only be secondarily liable so far as the cab company is concerned."

Before these two instructions were given, the jury had already been instructed on the railroad's duty of care. The court charged the jury that a railroad has a "nondel-

---

10. The cab company made a timely specific objection to these parts of the charge.

egable duty to use reasonable care to furnish its employees a safe place to work." Thus the seatbelt instruction asked the jury to determine whether by transporting the appellant in a cab without seatbelts, the railroad had breached that duty and whether the breach, if any, was the proximate cause of appellant's injury.

The court also instructed the jury on the taxicab company's duty. The instruction provided that the cab company was a common carrier which "owe[d] to its passengers the highest degree of care which is reasonably possible in the circumstances." The seatbelt instruction, however, did not ask the jury to determine whether the cab company's failure to install seatbelts breached that duty. Instead, according to the court's instruction on primary and secondary liability, the jury could have held the cab company liable merely because it concluded that the railroad was negligent.

Considered together, these instructions imposed liability upon the cab company without requiring the jury to first determine whether the cab company was negligent. We cannot agree with the trial court's apparent assumption that if the railroad was negligent in failing to utilize the services of a carrier whose vehicles were equipped with seatbelts the cab company must have been negligent in failing to install seatbelts in its cabs.

An actor's conduct is negligent if a reasonable man under like circumstances would recognize that it involves an unreasonable risk of causing harm to another.[11] Re-

11. That the cab company was a common carrier does not affect the applicability of these definitions to this case. It is true, of course, that our cases have placed upon common carriers a duty to use "the highest degree of care for [their passengers'] safety." *Pedretti v. Pittsburgh Rys.*, 417 Pa. 581, 583–84, 209 A.2d 289, 290 (1965); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 8, 203 A.2d 796–799 (1964); *Seburn v. Luzerne & Carbon County Motor Transit Co.*, 394 Pa. 577, 580, 148 A.2d 534, 536 (1959); *Archer v. Pittsburgh Rys.*, 349 Pa. 547, 548–49, 37 A.2d 539, 540 (1944) ("highest practical degree of care"). However, as Dean Prosser correctly states, "although [this] language . . . seems to indicate that a special standard is being applied, it would appear that

statement (Second) of Torts § 283 (1965). A risk is unreasonable if it is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done. Restatement (Second) of Torts § 291 (1965); see *Clewell v. Pummer*, 384 Pa. 515, 520, 121 A.2d 459, 463 (1956); cf. *Adley Express Co. v. Willard*, 372 Pa. 252, 93 A.2d 676 (1953). Obviously, the risk—the probability and the extent of the potential harm—resulting from both the cab company and the railroad's conduct was identical. Whether the risk created by each was unreasonable depends, therefore, upon the utility of their conduct. A jury could conclude that the risk created by the railroad in failing to utilize a carrier whose vehicles where equipped with seatbelts was unreasonable in light of the expense to the railroad and the accompanying social costs of seeking out such a carrier. On the other hand, the jury could also conclude that the reduction of risk accomplished by the use of seatbelts did not merit the social cost of higher fares or reduced service that may accompany requiring the cab company to install seatbelts in all its cabs.

 The trial court's instructions foreclosed the jury from considering whether the cab company was negligent. We therefore conclude that the cab company is entitled to a new trial as to its liability.[12]

none of these cases should logically call for any departure from the usual formula. What is required is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility is merely one of the circumstances, demanding only an increased amount of care." W. Prosser, The Law of Torts § 34, at 181 (4th ed. 1971).

12. The railroad urges that we grant it a new trial because we grant the cab company a new trial. In support of this contention, it cites several cases in which we granted new trials to all defendants in an action even though only one party appealed because we believed "the interests of justice require[d] it." *Ferruza v. Pittsburgh*, 394 Pa. 70, 145 A.2d 706 (1958); *Miller v. Pennsylvania R. R.*, 368 Pa. 507, 84 A.2d 200 (1951); *Nebel v. Burrelli*, 352 Pa. 70, 41 A.2d 873 (1945); *Biehl v. Rafferty*, 349 Pa. 493, 37 A.2d 729 (1944); *Kline v. Moyer*, 325 Pa. 357, 191 A. 43 (1937); *Stone v. Philadelphia*, 302 Pa. 340, 153 A. 550 (1931).

That part of the order of the Superior Court order granting appellee Penn Central Transportation Company and its trustees a new trial is reversed and the judgment of the trial court reinstated. That part of the order remanding for a new trial on the issue of liability of Frank O. Speelman, Inc., is affirmed.

MANDERINO, J., filed a concurring and dissenting opinion in which NIX, J., joined.

POMEROY, J., took no part in the consideration or decision of this case.

MANDERINO, Justice (concurring and dissenting).

I concur in the majority's reversal of the order of the Superior Court granting appellee Penn Central Transportation Company and its trustees a new trial, but dissent from that portion of the majority's opinion affirming the Superior Court's remand on the issue of liability of the cab company. I do not believe that the trial court's instructions "imposed liability on the cab company without requiring that the jury first determine whether the cab company was negligent." Implicit in the trial court's instructions, and in the jury's finding of negligence on the part of the railroad, was a finding of negligence on the part of the cab company.

As stated by the majority, the railroad had a "nondelegable duty to use reasonable care to furnish its employees a safe place to work," while the cab company "owe[d] to its passengers the highest degree of care which is reasonably possible in the circumstances." Even if we consider the duty imposed on the cab company to be merely one of reasonable conduct under circum-

Appellant had ample opportunity to raise his claim of error in post-trial motions. Having failed to do so, we can see no injustice in refusing to consider its unpreserved claims on appeal or in affirming the judgment against it. Cf. *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 619, n. 35, 327 A.2d 94, 103 n. 35 (1974).

stances which require an increased amount of care (see footnote 11 to majority opinion), it is clear that the cab company's duty to appellant is at least as great as that of the railroad. Both the railroad and the cab company had a duty in this case to provide a safe vehicle in which to transport appellant to his work location. The railroad, under the circumstances of this case, could not be held to have breached that duty without a finding (at least implicitly) that the cab company also breached its duty. If the cab company had not breached its duty to appellant, but had provided a safe vehicle in which to transport appellant, then the railroad could not have been found liable for its action of choosing that cab company.

Mr. Justice NIX joins in this concurring and dissenting opinion.