381 A.2d 421

**Robert C. REED, Appellee,**

v.

**Grace M. SLOAN, State Treasurer of the Commonwealth of Pennsylvania, and Alexander F. Barbieri, Court Administrator of Pennsylvania.**

**Appeal of Alexander F. BARBIERI.**

Supreme Court of Pennsylvania.

Argued Sept. 29, 1977.

Decided Dec. 1, 1977.

Susan L. Carroll, James D. Crawford, Schnader, Harrison, Segal & Lewis, Philadelphia, for appellant.

Gretchen Sohn Reed, Beaver, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

NIX, Justice.

The issue raised in this appeal is whether an elected common pleas court judge is entitled to any salary and emoluments of his office for the period between the date the term of the office was to commence and the date when he actually took the oath of office, where his ascension to the bench was delayed because of a dispute over his right to hold that office and where during that interim period he continued in the practice of law and received income therefrom. Alternatively, it is contended that in any event there must be a set-off of the income earned from the practice of law during the period that his right to hold the office was being contested.

Robert C. Reed, appellee herein, sought election to the position of Judge of the Court of Common Pleas of the Thirty-Sixth Judicial District in the Municipal Election of November 6, 1973. After that election a dispute arose which prevented the certification of the vote and ultimately came before this Court for resolution. *See, In re Recount of Ballots*, 457 Pa. 279, 325 A.2d 303 (1974). On October 12, 1974, after the conclusion of the aforementioned litigation and the certification of Judge Reed's election to the office of judge, his commission of office was duly issued by the Governor and recorded on October 21, 1974. On the 21st of October, Judge Reed took his oath of office and commenced the performance of his judicial duties.

Thereafter, being unable to resolve the question of his status between the time that his statutory term began (January 7, 1974) and the time that he took the oath of

office (October 21, 1974), Judge Reed commenced an original action in mandamus in the Commonwealth Court against the Honorable Grace M. Sloan, then State Treasurer of the Commonwealth of Pennsylvania, and the Honorable Alexander F. Barbieri, Court Administrator of Pennsylvania. In that action, Judge Reed sought, *inter alia*, payment of the salary for his judicial office for the period from January 7, 1974 to October 21, 1974. The Commonwealth Court granted Judge Reed's Motion for Summary Judgment and ordered that appellant, Alexander F. Barbieri, approve the payment to Judge Reed of $31,538.36 as judicial compensation for the contested period.[1] The Commonwealth Court further directed Ms. Sloan to pay upon receipt of a properly approved requisition the stated sum. Judge Barbieri filed an appeal to this Court from the decision of the Commonwealth Court[2] asserting that the monies earned by Judge Reed from the practice of law between January 7, 1974 and October 21, 1974, should be set-off against the amount awarded to Judge Reed by the Commonwealth Court.[3]

The pertinent constitutional and statutory provisions require that the terms of office for an elected judge of the Court of Common Pleas shall commence the first Monday of

1. This case was appropriate for a ruling on a motion for summary judgment on the pleadings since there were no issues of fact which remain unresolved. See *Coal Operators Casualty Co. v. C. T. Easterby & Co., Inc.*, 440 Pa. 218, 221, 269 A.2d 671, 672 (1970); and *Rose v. Food Fair Stores, Inc.*, 437 Pa. 117, 120, 262 A.2d 851, 853 (1970).

2. We entertained jurisdiction of this appeal pursuant to Section 203 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 203, 17 P.S. § 211.203 (Supp. 1977–78).

3. Prior to the commencement of the suit, the State Treasurer sought and received an Official Opinion from the Attorney General of the Commonwealth of Pennsylvania which concluded that Judge Reed was entitled to his salary and other emoluments of office from January 7, 1974 without any set-off from income earned during the period prior to his taking of the oath of office. Pursuant to this opinion, the State Treasurer did not oppose Judge Reed's claim before the Commonwealth Court and is not participating in the instant appeal before this Court. See Act of April 9, 1929, P.L. 177, art. V, § 512, as amended, Dec. 17, 1970, P.L. 935, No. 292 § 1, 71 P.S. § 192 (Supp. 1977–78).

January next succeeding their election and that they shall be commissioned accordingly. Art. V, §§ 15(a) and 16(a) of the Constitution of Pennsylvania; Act of April 15, 1851, P.L. 648, § 11, *as amended,* 17 P.S. § 8; Act of April 30, 1874, P.L. 118, § 1, *as amended,* 17 P.S. § 9. The appellant does not dispute that the term of office for this judgeship began the first Monday of January after the November municipal elections, nor could such a challenge succeed in view of the above cited constitutional and statutory authorities. Our prior cases have also established the general proposition that an elected official who assumes office after a contested election is entitled to compensation as if he had served from the statutory commencement of his elected term. *See Tarner v. Chambersburg Borough School District,* 338 Pa. 417, 12 A.2d 106 (1939); *Marshall v. Uniontown Borough School Dist.,* 262 Pa. 224, 105 A. 78 (1918); *Jones v. Dusman,* 246 Pa. 513, 92 A. 707 (1914); *Rink v. Phila.,* 15 W.N.C. 345 (1884). This rule has been applied even where another individual has received compensation for rendering the service for the period of time in question. *Marshall v. Uniontown Borough School, supra.*

The theory upon which these decisions are premised is that the right of the holder of the office to receive the compensation annexed to the office is legislative (or constitutional as in this case) and not contractual. Following this reasoning the salary belongs to the officer. de jure regardless of whether he or a de facto officer discharged the responsibilities of the office during the disputed period. *Cooke v. Roberts, supra. See also Commonwealth ex rel Shoemaker v. Thomas,* 328 Pa. 19, 195 A. 103 (1937); *Jones v. Dusman, supra.* Extending this reasoning to the question of whether the de jure office holder is entitled to his salary subject to set-off of earnings from other sources this Court concluded:

"The distinction is based on the theory that no contractual relationship exists between the governmental unit and a public official, and that the compensation, being incidental to the office which the official holds, is governed by the right to the office, and cannot be diminished

by the application of the doctrine of mitigation of damages which is based on the existence of a contractual relationship. *See: Seltzer v. Reading, supra; Coble v. Metal Township School District*, 178 Pa.Super. 301, 116 A.2d 113; Note, 150 A.L.R. 100."

*Vega v. Burgettstown Boro.*, 394 Pa. 406, 410, 147 A.2d 620, 622 (1958).

Appellant does not question the foregoing authority [4] but argues that Judge Reed waived or forfeited his right to judicial compensation because he engaged in the private practice of law during the period in question. We are urged to distinguish the instant facts from the holding of *Vega v.*

4. The dissenting opinion of Mr. Justice ROBERTS addresses the issue of whether a judge who was unable to assume office because of a contested election should receive compensation for that interim period during which time he performed no judicial services. This issue is not properly before this Court, since it is not the issue raised by appellant. *Commonwealth v. Branham*, 467 Pa. 605, 359 A.2d 766 (1976); *Phillips H. F., Inc. v. Continental Bank*, 467 Pa. 43, 354 A.2d 542 (1976); *School Dists. of Deer Lakes & Allegheny Valley v. Kane*, 463 Pa. 554, 345 A.2d 658 (1975); *Benson v. Penn Central Transportation Company*, 463 Pa. 37, 342 A.2d 393 (1975); *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975). Appellant concedes the proposition that an elected official is entitled to compensation in that situation, as if he had served from the statutory commencement of his elected term. The issue raised by appellant is whether this right to be compensated was forfeited by appellee by his engaging in the private practice of law during this interim period; and alternatively, whether the judicial compensation should be set off by income earned from the practice of law during this period.

While we are of the view that the merits of this issue are not before the Court in this case and, therefore, not properly considered here, we suggest that the dissent's reliance on *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1974) is clearly misplaced. *Firing* involved the question of the right of a justice of the peace to receive a salary from the date that the office holder reached 70 years of age to the date upon which the term would otherwise have terminated. As expressed in *Firing*, a term of office is considered to have ended upon reaching age 70 or upon the expiration of six years, whichever occurs first. Article V, sections 15(a) and 16(b) of the Pennsylvania Constitution. If a justice of the peace reaches age 70 first, the term is ended and thus there is no basis for a claim for further compensation. The factual posture in *Firing* bears no similarity to the instant situation where the result of the dispute establishes that appellee *was in fact entitled to have held the office from the commencement of the stated term.*

*Burgettstown Borough, supra,* because of the prohibitions of Art. V, § 17 of the Pennsylvania Constitution and Canon 5 of the Code of Judicial Conduct. To focus the instant issue in proper perspective it must be emphasized that the general rule does not permit a diminishment of the compensation due to a public official by the application of the doctrine of mitigation of damages. *Vega v. Burgettstown Borough, supra.* Starting from this premise it is clear that the appellant must demonstrate that the manner in which these outside funds were generated necessitates the carving of an exception to the general rule.

Art. V, § 17 of the Pennsylvania Constitution provides in pertinent part:

> "(a) Justices and judges shall devote full time to their judicial duties, and shall not engage in the practice of law, . . ."

Further, Canon 5 of the Code of Judicial Conduct implements this constitutional prohibition by providing in Section F that a judge should not practice law. However, in both instances the prohibition is applicable to one who is actually serving as a judicial officer. As noted by this Court as early as 1892, the "right 'to practice as an attorney and counselor at law' did not cease *until he actually assumed the judicial office by taking the prescribed oath."* *Kelly v. Herb et al.,* 147 Pa. 563, 565, 23 A. 889 (1892) (Emphasis added). *See also Simmons v. Tucker,* 444 Pa. 160, 281 A.2d 902 (1971). Therefore Judge Reed's actions in continuing his practice of law during the period between January 7, 1974 and October 21, 1974 were unquestionably proper and not in any way violative of the incompatibility prohibition. A requirement that an attorney must terminate his practice *before* a final determination of his right to the judicial office has been made would be an arbitrary rule,[5] and insensitive to the practical needs of an individual in such a situation.

---

5. As Canon 5 suggests the reason for the prohibition against judges practicing law is to avoid the risk of conflict with his judicial duties. Obviously, no such conflict can possibly arise until he has assumed the responsibilities of the office of judge. *Simmons v. Tucker, supra.*

The appellant attempts to distinguish *Kelly v. Herb, supra,* since it was decided under the Constitution of 1874 and preceded the Constitutional Amendments of 1968 and the Code of Judicial Conduct of 1974. However, the reasoning of *Kelly* was followed (although the decision was not cited) in *Simmons v. Tucker, supra,* which was decided after the Constitutional amendments of 1968.

"It is our view that one does not hold office as a federal judge until the oath of office is administered and that the date of the issuance or acceptance of the federal commission, while relevant in other contexts, . . ., is not relevant to a discussion of this Commonwealth's constitutional and statutory incompatibility provisions." Id., 444 Pa. at 164, 281 A.2d at 904.

Nor are we impressed with appellant's argument that an appearance of impropriety is created by allowing Judge Reed to receive his judicial salary for the questioned period without a set-off for the funds he received from private practice during that time frame. The impropriety could only arise from the improper performance of his judicial responsibilities because of a competing interest related to his private practice. Where he did not discharge any judicial duties nor was he vested with the authority to perform such duties no such impropriety could occur. In such a situation any suspicion of impropriety would be groundless. We find no basis for concluding that the public trust in the integrity and independence of our judiciary would be in any way fostered by the position urged by appellant.

The fundamental fallacy in appellant's argument is the failure to distinguish between the concurrent holding of two incompatible positions and the right to payment of salary for an office where there has been an involuntary deferred assumption of that position. The evil sought to be avoided by the incompatibility provisions is the improper performance of the duties of the office which might be inspired by the holding of an incompatible position. The fact that the person derives income from the incompatible position is only significant in that it might provide the incentive to improperly discharge the responsibilities of the public office. In

the context of a deferred assumption of office it is therefore clear that the receipt of salary during the period during which the office holder was prevented from discharging the duties of the office could in no way occasion the harm sought to be avoided by our doctrine of incompatible offices.

The Order of the Commonwealth Court granting appellant's motion for summary judgment is affirmed.

ROBERTS, J., files a dissenting opinion joined by PACKEL, J.

POMEROY, J., files a dissenting opinion.

ROBERTS, Justice, dissenting.

The majority orders appellant Alexander Barbieri, Court Administrator, to authorize payment to appellee Robert Reed of more than $31,000 in judicial salary for a period prior to taking his oath of office in which appellee performed no judicial duties because of a lawful election challenge, and during which he maintained a private practice of law. The payment of this unearned salary to appellee is contrary to the Constitution of Pennsylvania and represents in my view impermissible expenditure of public funds. Moreover, the illogical and inequitable result of the majority's decision is that appellee, for the period in which he maintained his private practice and performed no judicial duties, will receive substantially greater compensation than did those judges who actively performed their judicial duties and were therefore required to forego any compensation from the private practice of law. I dissent.

I

In November, 1973, H. Beryl Klein, Joseph S. Walko, and appellee were candidates for two seats on the Court of Common Pleas of Beaver County. Of the three, only H. Beryl Klein emerged as a clear winner. On the first count, Klein received 41,753 votes; Walko, 30,569; and appellee, 30,355.

In January, 1974, Klein filled one of the two seats on the bench. The other seat was not filled until October, 1974,

when, after eleven months of litigation, appellee was declared to have received more votes than Walko.[1] Appellee took his oath of office and began his judicial duties more than nine months later than did Judge Klein.

Appellee continued to practice law throughout the period the election was in dispute, earning from his practice a net income of more than $18,000. Nonetheless, appellee commenced an action in mandamus in the Commonwealth Court against Grace Sloan, Treasurer of the Commonwealth, and appellant Alexander Barbieri, Court Administrator of Pennsylvania, seeking the sum of $31,000 as salary for the nine months between January and October, 1974, when he did not perform judicial duties.

The majority, relying on what it terms the "general proposition" that an elected official assuming office after a contested election is entitled to compensation for the time when he did not serve as a judge, affirms the order of the Commonwealth Court. The majority concludes that, in addition to the $18,000 appellee was able to earn in private practice, he is entitled to the $31,000 he would have earned had he taken his oath of office and begun serving on the bench in January, 1974.

## II

The majority's decision accords appellee a constitutional right contrary to the language of the Constitution.

1. Within five days of the election, representatives of Walko and appellee filed petitions in the court of common pleas requesting that 112 election district ballot boxes be opened and recounted pursuant to Sections 1701 and 1703 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, 25 P.S. §§ 3261 and 3263 (1963). The court appointed three recount boards to recount these boxes.

The recount boards' tally was as follows: Klein, 41,501; appellee, 30,598; and Walko, 30,591. Appellee and Walko appealed.

This Court heard their appeals. In July, 1974, we held that the record showed appellee to have received 30,615 votes, and that the trial court was to count certain additional ballots. *In re Recount of Ballots,* 457 Pa. 279, 325 A.2d 303 (1974).

After these additional ballots were counted, appellee was declared the winner of the second of the two seats. No appeal from this finding was taken and appellee took his oath of office and commenced the performance of his judicial duties on October 21, 1974.

Section 16(a) of the judiciary article, Pa.Const., art. V, § 16(a) provides:

> "*Compensation of justices, judges and justices of the peace*
>
> (a) Justices, judges, and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth."

It is fundamental that a court must interpret the Constitution to give effect to the intent of its framers. E. g., *Moers v. City of Reading,* 21 Pa. 188 (1853). In ascertaining this intent, we should not give the language of the Constitution a strained or technical construction; rather, "the words should be interpreted in their popular, natural and ordinary meaning." *Commonwealth v. Harmon,* 469 Pa. 490, 366 A.2d 896 (1976). We must not interpret provisions of the Constitution in such a way that unreasonable or absurd consequences result. *Commonwealth v. Darcy,* 362 Pa. 259, 66 A.2d 663 (1949).

Thus, when the common and popularly understood meaning of compensation is payment for services rendered, the provision of the Constitution directing that judges be "compensated" does not grant appellee a right to a judicial salary for the time when prior to taking the oath of office he did not perform judicial services because he was not entitled to office due to a lawful election dispute.

In *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833 (1976), we held that a justice of the peace who retired mandatorily at the age of 70 was not entitled to receive the salary which would have been earned in the remaining years of his term of office. Mr. Justice (now Chief Justice) Eagen, speaking for a unanimous Court, stated:

> "We consider it far more likely that the voters would have assumed that appellant's mandatory retirement would not only cut short his active service as justice of the peace but his salary based on such active service as well."

466 Pa. at 569, 353 A.2d at 838.

The principle established in *Firing* is clear: when judicial services cannot be lawfully performed there is no constitutional right to the payment of salary. I can see no material difference between *Firing* and this case.

If there is no constitutional right to payment for judicial services not performed because of operation of law at the end of a term of office, *Firing v. Kephart, supra,* there is no constitutional right to payment for judicial services not performed because of operation of law at the beginning of a term of office. In each situation, the claimant lacks such a right because the judiciary article of the Constitution contemplates de jure capacity to perform the duties of office. Cf. *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329 (1977) (right to office of appointed judge ends before expiration of term when elected judge takes oath for same office); *Berardocco v. Colden,* 469 Pa. 452, 366 A.2d 574 (1976) (same); *Simmons v. Tucker,* 444 Pa. 160, 281 A.2d 902 (1971) (term of office of federal judge begins not at time of appointment or of receiving commission but at time nominee takes oath of office).[2]

For the proposition that an elected official who assumes office following a contested election is entitled to compensation for the time when he cannot lawfully serve as a judge, the majority relies on *Rink v. Philadelphia,* 15 W.N.C. 345 (Pa.1884), aff'd, 17 W.N.C. 136, 1 Sadler 390, 2 A. 505

---

**2.** The majority's reliance on *Simmons v. Tucker,* 444 Pa. 160, 281 A.2d 902 (1971), is unjustified. In *Simmons,* the issue was whether a judge of the court of common pleas held incompatible positions when he accepted a commission on the federal bench. If anything, *Simmons* undercuts the majority's position, for there this Court held that the term of office of a federal judge began only when he took the oath of office, not when he received his commission or his appointment.

Similarly, *Kelly v. Herb,* 147 Pa. 563, 23 A. 889 (1892), lends no support to the majority. *Kelly* holds that the right to continue private legal practice ends only upon taking the oath of judicial office. Whatever appellee's right to practice law until he assumed judicial office by taking the prescribed oath, the issue here, on which *Kelly* sheds no light, is whether appellee is entitled to judicial salary for the time following election when he could not lawfully perform judicial duties.

(Pa.1886), and several other cases following *Rink*. In *Rink,* the Court explicitly justified its holding through the legal fiction that the inability by operation of law to perform a duty is the equivalent of performance. 15 W.N.C. at 347. *Firing v. Kephart, supra,* abandoned that fiction, holding that a judge who by operation of law was unable to perform his judicial duties was not entitled under the Constitution of 1968 to payment for that part of his term in which he could not lawfully sit as a judge. The fiction adopted in *Rink* permitted two individuals simultaneously to fill the office sought by Rink. Mr. Justice (now Chief Justice) Eagen stated in *Firing v. Kephart:*

"It plainly would be anomalous to construe the Constitution . . . as permitting two persons filling two separate terms to occupy the same office at the same time."

466 Pa. at 567, 353 A.2d at 836–37. Consequently, the dated authorities relied upon by the majority are unpersuasive and I would overrule *Rink*.[3]

This position is fully consistent with the diminishment clause of Section 16(a) of the judiciary article. That clause, Pa.Const., art. V, § 16(a), states in part:

"[T]he compensation [of justices, judges, and justices of the peace] shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth."

This Court stated in *Firing v. Kephart, supra:*

"though the 'regular' term of office of a justice of the peace is six years, the Constitution clearly indicates that the term of a justice of the peace does not have to be a regular one."

**3.** I express no opinion as to whether this Court should overrule those cases cited by the majority which followed *Rink,* for none of them involved a judge. *Vega v. Burgettstown Boro.,* 394 Pa. 406, 147 A.2d 620 (1958) (police official); *Tarner v. Chambersburg Borough School District,* 338 Pa. 417, 12 A.2d 106 (1939) (school official); *Marshall v. Uniontown Borough School Dist.,* 262 Pa. 224, 105 A. 78 (1918) (same); *Jones v. Dusman,* 246 Pa. 513, 92 A. 707 (1914) (county treasurer).

466 Pa. at 569, 353 A.2d at 838. Where there is an election dispute, there can be no regular ten year term of office. A contrary expectation ignores the realities of political life. See generally *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698 (1977). We recognized in *Sweeney* that:

"[An elected official] holds office for the benefit of his constituents and cannot justifiably rely on a private need or expectation in holding office. . . . [He] is subject to the conditions imposed by the terms and nature of the political system in which he operates."

473 Pa. at 524, 375 A.2d at 713. Thus, though the regular term of office of a judge of the court of common pleas is ten years, Pa.Const., art. V, § 15(a), there is no absolute right to a ten year term of office.

The majority's decision creates an obvious inequity among members of the courts of common pleas. Of all of the common pleas court judges in the Commonwealth, only appellee will receive both a judicial salary and income from the private practice of law for the period during which his election was in dispute. The anomalous result is that appellee will receive substantially greater income from this period than did any of his brethren, even though, unlike the other common pleas court judges, he performed no judicial services. Such a result is not only illogical, but holds considerable potential for impairing the orderly administration of judicial services.

Public confidence in the judicial system is fundamental to the proper administration of justice. Respect for a judicial system often called upon to make controversial and unpopular decisions is more easily maintained if there is public confidence in the impartiality of the decisionmaking process. It is unlikely that this public confidence will be advanced by a decision awarding a judicial officer a sum of money from public funds which admittedly has not been earned.

The majority finds in the Constitution a right which the Constitution does not grant. I dissent.

PACKEL, J., joins in this Dissenting Opinion.

POMEROY, Justice, dissenting.

I respectfully dissent. I do not agree that a judge should be able to receive his salary retroactively for a period during which he does not, albeit understandably, comply with the corresponding ethical obligations that attach to judicial office.

I have no quarrel with the general proposition that a judge, like any other holder of elective office whose oath-taking has been delayed because of an election contest, should receive the salary to which he would be entitled had there been no contest. This seems compelled both by considerations of fairness and by the statutes and cases discussed by the majority and which are unchallenged by appellant. Nor do I dispute the majority's conclusions that by engaging in the practice of law while the contest concerning his election was pending, Judge Reed did not violate either Article V, Section 17(a) of the Pennsylvania Constitution (judges "shall not engage in the practice of law"),[1] or Canon 2 of the Code of Judicial Conduct, *supra* note 1, 455 Pa. at xxx ("A judge should avoid impropriety and the appearance of impropriety in all his activities"). I think these conclusions are acceptable because Judge Reed was not known to be an elected judge until the contest was resolved, and could not serve as a judicial officer or, indeed, draw any judicial salary until resolution of the contest had been accomplished. See *Kelly v. Herb,* 147 Pa. 563, 23 A. 889 (1892).

What the majority does not take into account, however, is that this action to compel the payment of salary retroactively to the statutory commencement of the term of office is brought by a sitting judge who is subject to the Code of Judicial Conduct. And the Code, in my view, does not permit a judge to receive a judicial salary for a period of time when he performed work that was incompatible with the judicial office from which he now seeks earnings *nunc pro tunc.* As suggested above, the fact that there was an

1. Canon 5(F) of the Code of Judicial Conduct, adopted by this Court effective January 1, 1974, 455 Pa. xxix, xlii (1973), contains the same prohibition.

election contest imputes no blameworthiness to Judge Reed, and it would be unrealistic and harsh to demand that one in his position must, if he needs income on which to live, suddenly convert to another occupation. On the other hand, as I see it, the fact of the contest did nevertheless confront Mr. Reed with the necessity to make a choice as between his prospective judicial salary and what he might earn as a practicing lawyer during the period that the election remained in doubt. He should not be able to have it both ways, which is what the Court's decision allows. To permit one whose entitlement to office is finally vindicated to turn his temporary disability into a permanent windfall, through the addition to the fruits of his law practice of judicial salary for the same period, presents, in my view, an "appearance of impropriety" that is clearly within the prohibition of Canon 2(A) of the Code.[2] See and compare *Matter of Dandridge,* 462 Pa. 67, 337 A.2d 885 (1975) (retention by a judge of monies received from a testimonial dinner held to create an "appearance of impropriety").

*Kelly v. Herb, supra,* relied upon by the majority, has nothing to do with the ethical question presented by this case. *Kelly* held only that one who had been commissioned

---

**2.** Canon 2(A) of the Code, *supra* note 1, 455 Pa. at xxx, provides in full:

> *"A Judge Should Avoid Impropriety and*
> *the Appearance of Impropriety*
> *in All His Activities*

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. As the Commentary to this Canon explains:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly."

Canon 2 of the Code of Judicial Conduct has its counterpart in Canon 9 of the Code of Professional Responsibility, adopted by this Court effective February 27, 1974, 455 Pa. lvii (1974):

"A lawyer should avoid even the appearance of impropriety." The ethical considerations which accompany the Canon expand upon this concept. *See* 438 Pa. xxv, cxiii–cxiv (1970).

as a judge but who had not yet been sworn in could properly sign a pleading he had prepared for his client. The decision was concerned altogether with the validity of that pleading in the setting of that case; it was not concerned, as we are here, with the ethical aspects of the actions of one who is now a sitting judge, a matter which affects the integrity of the entire judicial system. Similarly, *Simmons v. Tucker*, 444 Pa. 160, 281 A.2d 902 (1971), was concerned only with the date on which an election was to be held to fill a judicial vacancy, not with enrichment of a judge from the combined income of incompatible positions.

The reliance of the Court on the decisions which establish the general proposition that an elected public official who assumes office after a disputed election is entitled to compensation as if he had served from the commencement of his elected term is also misplaced. Those cases speak in property law terms of "entitlement" to office, the emoluments which are "annexed" to it, and the "vesting" of rights to those emoluments.[3] *See* cases cited in the opinion of the Court, *ante* at 573–575. However valid these concepts may be in most public office situations, they are wide of the mark when the office is a judicial one and the candidates are, necessarily, subject to the canons of professional and judicial ethics.[4] The application of these canons to the elective process and the supervisory power of this Court over the conduct of judges and lawyers, *see* Pa.Const. art. V, § 10; see also, e. g., *Petition of Squires & Constables Ass'n.*

---

**3.** As the opinion of the Court points out, the Court has also stated that even principles of set-off to avoid double compensation do not apply to a person who is a public officer as distinguished from a public employee. *Vega v. Burgettstown Borough,* 394 Pa. 406, 147 A.2d 620 (1956). This was not, however, a holding of that case, as the majority would read it, but dictum only. Moreover, *Vega* was not concerned with forfeiture of salary, but only with set-off of a salary of a public employee.

**4.** Note particularly Canon 7 of the Code of Judicial Conduct, *supra* note 1, 455 Pa. at xliv–xlvi, which by its terms applies to lawyers who are candidates for judicial office. *See also* Blakslee, Lawyers and Elections, 54 A.B.A.J. 410 (1968).

*of Pa., Inc.,* 442 Pa. 502, 275 A.2d 657 (1971), are developments with which the stilted, traditional approach to title to public office is not compatible. Thus the cases the majority cites should not be found controlling in the case at hand.

Nor can I agree with appellee's implicit argument that a declaration that he has forfeited his right to salary for the contest period by practicing law works a diminution of judicial salary in violation of Article V, Section 16(a) of the Pennsylvania Constitution.[5] Our cases, and indeed the whole history of this and similar provisions, clearly show "that the well-established purpose of the prohibition against diminishing the compensation of the judiciary during their terms of office . . . is to maintain the independence of the judiciary from encroachment by the other branches of government." *Firing v. Kephart,* 466 Pa. 560, 568, 353 A.2d 833, 837 (1976). See, e. g., *Bailey v. Waters,* 308 Pa. 309, 162 A. 819 (1932); The Federalist No. 79 (A. Hamilton). *See also* the comments of Judge Von Moschzisker, specially presiding in the Court of Common Pleas of Dauphin County, in *Commonwealth ex rel. Attorney General v. Mathues,* 210 Pa. 372, 401–402, 59 A. 961 (1904). No encroachment upon judicial independence by the legislature or the executive is involved in this case. Rather, it was the choice made by appellee to continue in the practice of law which disentitles him to retroactive judicial salary. And there is no doubt that this forfeiture can be declared as a matter of law by this Court by virtue of its general supervisory powers over all judges of the Commonwealth under Article V, Section 10(a) of our Constitution. *See also* Pa.Const. art. V, § 18(d) (Supreme Court may cause "any justice or judge" to be "disciplined for . . . conduct which prejudices the proper administration of justice or brings the judicial office into disrepute . . .").

**5.** Article V, Section 16(a) provides in full:
"Justice, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth."

The importance of the integrity of the judicial office exacts various obligations from those who hold that office. Among them is the requirement that a judicial officer not practice law,[6] and its corollary, that he receive no income from the practice of law. These restrictions are common to all judges in Pennsylvania. Appellee chose to remain in private practice until declared the winner of a contested judicial election, and now seeks to compel the payment of judicial salary retroactively, including this period of private practice. The appearance of impropriety created by this conduct seems to me apparent.[7] It has been well said that "judges have a unique role in the polity, and community expectations about what is acceptable behavior for them are generally higher than for other public officials; even one instance of judicial misconduct may therefore have damaging consequences far out of proportion to its intrinsic moral seriousness." Braithwaite, *Who Judges the Judges?* (1971), at 9. To allow Judge Reed to seek and compel retroactive pay under these circumstances, as the Court's decision does, can only erode respect for judges and the institution of the judiciary. Hence this dissent.

6. Pa.Const. art. V, § 17(a); Canon 5(F), Code of Judicial Conduct, *supra* note 1; Act of April 14, 1834, P.L. 333, § 75, 17 P.S. § 1607 (1962).

7. An alternative argument raised by appellant, and also rejected by the Court, is that if the salary demanded by Judge Reed is to be paid, it should be reduced by the amount he earned from private practice. Thus, under the facts of this case, Judge Reed would receive some $13,000 in judicial salary, rather than the approximately $31,000 he claims. The difficulty with this approach is that while it would lessen the vice inherent in allowing full double compensation, it would nevertheless fail to remove the appearance of impropriety which comes from sanctioning the payment to a judicial officer of earnings from incompatible sources for the same period of time.