434 A.2d 1165

**TRIANGLE PACIFIC PHILADELPHIA CORP., Appellant,**

v.

**TRIDENT ENTERPRISES, INCORPORATED.**

Supreme Court of Pennsylvania.

Argued April 27, 1981.

Decided Sept. 24, 1981.

Steven H. Berkowitz, Philadelphia, for appellant.

M. Patricia Harkins, Layfayette Hill, for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

At issue on this appeal is whether the Court of Common Pleas of Philadelphia abused its discretion in ordering an *ex parte* trial. The Superior Court held that the *ex parte* trial was improper under the principles established by this Court's decision in *Budget Laundry Co. v. Munter,* 450 Pa. 13, 298 A.2d 55 (1972). We share the Superior Court's view and, hence, affirm.[1]

### I

Appellant Triangle Pacific Philadelphia Corp. and appellee Trident Enterprises, Inc., were parties to a contract, executed in May of 1971, by which appellant agreed to supply appellee with lumber and materials at specified prices. In April of 1972, appellant filed a complaint in assumpsit alleging that it had sold and delivered goods to appellee pursuant to the contract, and that appellee had failed to pay for them. Appellant sought a judgment of $4,171.25, plus interest from the date the account had become due. The complaint was signed by Gilbert Newman, Esq., a member of a large Philadelphia law firm representing appellant.

1. This case was reassigned to this writer on June 30, 1981.

Appellee is represented by M. Patricia Harkins, Esq., a sole practitioner whose offices were located in Philadelphia at the time the complaint was filed. In an answer to the complaint, appellee denied that it had received all of the goods allegedly sold, and claimed that the prices actually charged and appellant's alleged schedule of prices varied. Appellee also filed a counterclaim in which it alleged that appellant's claimed failure to deliver materials and related defaults had caused appellee to expend $5,318.44, nearly $1,150 more than the amount of the judgment which appellant sought. Still represented by Gilbert Newman, Esq., appellant denied the allegations contained in appellee's counterclaim.

In June of 1972, appellant served upon appellee two sets of interrogatories which were prepared by Newman. The matter then proceeded to arbitration, with both sides represented by their original counsel. In March, 1973, a panel found in favor of appellant, in the full amount which appellant had claimed. Appellee appealed to the Court of Common Pleas of Philadelphia.

Some time after appellee had filed its appeal, counsel for appellee moved her law office from Philadelphia to Montgomery County and representation of appellant changed hands within the same Philadelphia law firm, from Newman to Steven Berkowitz, Esq. The record in no respect indicates that this change of representation was made known to counsel for appellee.

In December, 1975, and again early in January, 1976, the appeal was noted in *The Legal Intelligencer*, the official newspaper for the publication of notices of the court of common pleas. The December publication indicated that appellee's appeal, along with other appeals from arbitration, would be assigned for trial starting January 5, 1976. The January publication indicated that appellee's appeal was assigned for trial on January 16, 1976, before Judge McDevitt. It is agreed that counsel for appellee did not subscribe to the *Intelligencer*.

Berkowitz, new counsel for appellant, did not contact the office of counsel for appellee until the week preceding the scheduled trial date, when he phoned several times. There is no indication on the record that Berkowitz explained that he had replaced appellant's previous counsel Newman. Berkowitz's calls were not returned.[2]

On January 13, 1976, Berkowitz delivered a brief to Judge McDevitt and mailed a copy to counsel for appellee. On January 14, upon receipt of appellant's brief, counsel for appellee immediately wrote Berkowitz to advise him that she would be in trial in Montgomery County on the 16th. The letter went on to state:

"If you can arrange with Judge McDevitt to reschedule this for a date certain, I shall be most grateful. The main witness for the defense in this matter is a former superintendent of the Defendant Corporation who is now employed out of state and it will be necessary for me to secure his appearance, a task which might require several weeks notice to him."

On January 16, the scheduled date of trial, counsel for appellee phoned Judge McDevitt's chambers. Although the record indicates that the court continued the matter until January 19, there is nothing to indicate that the court directly informed counsel for appellee of the continuance.

2. In a "Supplemental Reproduced Record," made a part of its brief filed with the Superior Court, appellant Triangle includes an affidavit of Steven Berkowitz, its counsel, sworn to and subscribed before a notary public on January 24, 1977, more than one year after the *ex parte* trial. The affidavit states:

"I attempted to contact Defendant's counsel during the week of January 12, 1976, making at least four telephone calls to counsel for Defendant, none of which were returned. In most of these calls, I indicated I was calling in reference to the upcoming jury trial between Triangle Pacific Philadelphia Corp. and Trident Enterprises Incorporated, and in the telephone calls I made towards the end of the week, I emphasized as strongly as I could the proximity of the trial date to the secretary taking the calls for counsel for the Defendant."

This supplemental record fails to disclose that counsel for appellant explained that he had replaced appellant's previous counsel. Moreover, it is undisputed by the "end of the week," counsel for appellee had already taken measures to seek relief from the scheduled trial date of January 16. See infra text.

Indeed, an affidavit of counsel for appellant states that the court assigned to him the task of advising counsel for appellee of the new trial date.[3]

On January 19, counsel for appellant appeared before Judge McDevitt ready to proceed in the absence of appellee or its counsel. Counsel for appellant stated to the court:

"I have, upon receiving notice of the pendency of this jury trial, attempted on approximately a dozen occasions in the past week or so to contact both counsel for the defendant [(appellee)] and the defendant itself.

I have left messages with the individuals who answered the phone calls which I placed and each time asked that the phone calls be returned. Not one of them has been returned.

I have notified Ms. Patricia Harkins, who is counsel of record for the Defendant by letter on Monday and by letter this past Friday that the matter was coming up for jury trial, first that it was coming up last Friday, and, then, subsequently, that it would be listed today at 10:00 a. m.

The only response I have received is a phone call from the attorney for the Defendant's secretary, who conveyed the request that a new date be set, with no specific number of days and no reason advanced for the request.

There was a letter sent to me of Friday, of which I have sent a copy to Your Honor, from Ms. Harkins, and she indicated that they would need a period of at least several weeks to locate a witness who is in another state.

3. The affidavit, also contained in the Supplemental Reproduced Record filed with the Superior Court, see supra note 2, states:

"At 10:00 A.M. on Friday, January 16, 1976, I appeared before the Honorable John J. McDevitt, III, prepared for trial.... Judge McDevitt ruled that the case would go forward on Monday, and asked me to so inform counsel for the Defendant."

The sole indication of an effort by counsel for appellant to "inform" counsel for appellee of the ruling of the court is the statement of counsel for appellant to the court on Monday, January 19, that he had notified opposing counsel of the ruling by letter. There is no indication that the letter was timely received by counsel for appellee. See infra text.

Based on these circumstances, Your Honor, and upon the fact that this is a simple book account case, if I can call it that—goods were delivered and not paid for—I must request that this case go forward this morning.

This is the second occasion which we have [been] present and prepared to go to trial and we have caused the Plaintiff to incur significant expenses in having the two witnesses who were present on Friday and who are present here today available for both days." [4]

Without any indication that counsel for appellee had received notice that trial "would be listed today at 10:00 a. m.," the court ordered the case to proceed to trial *ex parte*. The court stated:

"I can say for the record we are in the course of operating a five week schedule to dispose of something in excess of 3,000 arbitration appeals.

A backlog has built up and there has been a drive to make a substantial dent in the number.

The list of cases to appear on these daily lists was first published about six weeks ago. This case, of course, was on it.

It was on a daily list last Friday, number one. That list, I believe, was first published a week in advance of that date, or either a week or two weeks in advance of that date.

I have heard nothing directly from Ms. Harkins. She hasn't made an application here; she has not written to the Court; she has failed to follow the instructions which have been published repeatedly with respect to cases on the list, the requirements on the part of counsel and the procedure for obtaining a continuance.

A continuance can only be obtained by an application to the Calendar Judge, Judge Greenberg at this point. Ms. Harkins is aware or should be aware of that.

She said she was engaged in Montgomery County. We are not accepting engagement slips from other counties.

4. Record at 24a–25a.

Actually, I don't have an engagement slip from her. I have no word from her at all.

The other counties are not accepting our busy slips. So, with a program like this in front of us we're not accepting theirs, either.

Again, I repeat, we have no busy slip.

I told Mr. Berkowitz last week, I guess before Friday, when this question of a continuance first came up, that Ms. Harkins must follow the regulations or the case will go on trial. So, the case is now going to trial." [5]

The jury returned a verdict of $4,916.01 in favor of appellant, the sum of the arbitrators' award plus interest. The jury did not consider appellee's counterclaim.

Appellee filed written "Exceptions To Verdict" advising the court that, based on conversations with the court's secretary, counsel for appellee had believed that an appropriate continuance would be entered. Without taking evidence, the court denied appellee relief. In its accompanying opinion, the trial court sought to justify the *ex parte* trial on the ground that no "satisfactory excuse" within the meaning of Pa.R.Civ.Proc. 218 had been offered for the absence of counsel for appellee. Even though the letter of counsel for appellee merely pointed out the difficulty she might have in obtaining the attendance of appellee's "main witness," and requested only a "date certain," the court expressed its belief that counsel for appellee had sought a continuance of "several weeks."

On appeal, the Superior Court reversed. 264 Pa.Super. 76, 399 A.2d 131 (1978). This Court granted allowance of appeal.

## II

From this record emerge two critical facts overlooked by the trial court. First, although the trial court had committed the task of advising counsel for appellee of the new trial date of January 19 to counsel for appellant, there was

5. Record at 25a–27a.

nothing before the trial court on the 19th, when it authorized the *ex parte* trial, establishing that counsel for appellee was aware of the new trial date. Counsel for appellant advised the court that he had written to counsel for appellee on Friday, the 16th, but did not confirm receipt of the letter by counsel for appellee. As a result, the court permitted trial to proceed *ex parte* at a time when counsel for appellee was unaware that the matter would be considered.

Second, there is nothing to indicate that counsel for appellee sought any unreasonable relief from the pending trial date. In her correspondence with counsel for appellant and with the court, counsel for appellee did allude to the possibility that it might take "several weeks" for her to obtain the presence of appellee's "main witness." However, nothing in her correspondence suggested that she sought a continuance that would assure the availability of the witness. To the contrary, counsel for appellee requested a "date certain." Thus it would appear that the immediate concern of counsel for appellee was to avoid any conflict with her commitment to appear in the Montgomery County proceedings on the originally scheduled trial date.

Consideration of these critical facts requires the conclusion that the trial court failed to adhere to the principles articulated in *Budget Laundry Co. v. Munter,* supra. In *Budget Laundry,* the defendants were represented by one member of a two-member law firm. When the case was ready for jury selection, the calendar judge was advised that counsel was then in trial before another judge of the same court and scheduled to appear thereafter in a federal district court. The court had been previously informed that only the one member of the firm could try the case. However, the court directed jury selection to commence in counsel's absence. On the following day, when presentation of evidence was to begin, counsel for the defendants appeared, seeking a continuance. Counsel had completed the trial before another judge of the court of common pleas, and his appearance in federal district court was not expected to last beyond the expiration of the jury trial term, or to conflict with the

schedule of counsel for plaintiff. Nonetheless, the court directed an *ex parte* trial, which resulted in a verdict and judgment in favor of plaintiff.

This Court recognized "the extreme problems created ... by calendar congestion and the attendant delays in the disposition of litigation. It is only by virtue of the adoption of strict calendar control that courts throughout the Commonwealth have been successful in coming to grips with this problem." 450 Pa. at 17, 298 A.2d at 56. However, the judgment was unanimously reversed. In concluding that the trial court abused its discretion, this Court stressed the importance of the "cooperative policy" between the trial court and the federal district court:

> "[T]he two courts have informally arranged matters so that busy trial counsel are able to alternate between the two courts where there are conflicts. . . . Although such an arrangement cannot possibly work to perfection, it must surely be of great assistance to both courts, to the lawyers involved and to the litigants."

The Court went on to "approve of such arrangements and urge their continuance." 450 Pa. at 21, 298 A.2d at 58.

Manifestly lacking here were the requisite flexibility and "cooperative policy" in the trial court's administration of its docket. Counsel for appellee was validly pursuing a matter in Montgomery County when she learned of the pending trial in the present matter. As in *Budget Laundry*, counsel simply sought reasonable relief from the conflicting schedule. As a sole practitioner, she was in the same position as counsel in *Budget Laundry*, whose partner was unfamiliar with the matter to be tried and unable to assume responsibility for the litigation.

Appellant emphasizes the failure of counsel for appellee to make herself aware of the originally-scheduled trial date of January 16, as advertised in the *Legal Intelligencer*, as well as her failure to return the phone calls of counsel for appellant during the week preceding the January 16 trial date. This emphasis overlooks the fact that once counsel for appellee became aware of the January 16 trial date, she

made her conflict known both to counsel for appellant and to the court in sufficient time to permit the court to consider and act upon the request for relief. Compare *Dublin Sportswear v. Charlett*, 485 Pa. 633, 403 A.2d 568 (1979).

More important, appellant's emphasis is misplaced. The proper focus is not upon what actions might have been appropriately taken by the trial court on January 16, when the court chose to grant relief. Rather, the focus must be upon the reasonableness of the court's action on January 19, when it ordered that the matter proceed to trial *ex parte.* On a record which fails to establish that counsel for appellant fulfilled his obligation, as directed by the trial court on January 16, to inform counsel for appellee of the January 19 trial date, it was improper for the trial court to proceed with trial on January 19 in the absence of counsel for appellee.

Order of the Superior Court affirmed.

FLAHERTY, J., joins in this opinion and files a concurring opinion.

NIX, J., concurs in the result.

LARSEN, J., files a dissenting opinion.

O'BRIEN, C. J., did not participate in the consideration or decision of this case.

FLAHERTY, Justice, concurring.

I join the majority opinion.

This case presents us with great difficulty. In providing justice to a large population in a highly urbanized area, it is indeed essential that a rigorous scheduling policy be maintained and enforced. What can appear to be harsh in certain cases is the price we pay to keep the machinery of our system of justice operating. With this in mind, we must be careful lest we succumb to the almost inevitable institutional syndrome of neglecting the very purpose of the institution for the mere sake of the institution in and for itself. The purpose of the judicial institution is to provide justice, and providing justice efficiently and promptly is, of course,

inherent in that purpose. Accommodating this balance provides us with a difficult task.

Examining the record in this case, it is noted that the court was "... in the course of operating a five week schedule to dispose of something in excess of 3,000 arbitration appeals ... A backlog [had] built up and there [was] a drive to make a substantial dent in the number."

Counsel for the appellee, a single practitioner apparently relied upon a perception of professional courtesy and, when made aware that a bona fide conflict of trial dates confronted her, communicated by letter with counsel for the appellant, advising of her difficulties with the trial date, both as to the trial conflict and in the task of securing the appearance of a witness located outside of Pennsylvania. She requested counsel to seek a "date certain" for the trial, certainly not an unreasonable request. True, counsel could have, herself, petitioned the court, but she, as it appears, unfortunately, sought the cooperation of her opposing fellow member of the Bar.

The record is clear that the court was aware of the problems besetting counsel for the appellee but, in total disregard of the very *purpose* of the judicial institution, chose instead to serve only the institution, as is evident by the statements:

> ... She said she was engaged in Montgomery County. *We are not accepting engagement slips from other counties* ...
>
> The other counties are not accepting our busy slips. So, with a program like this in front of us *we're not accepting theirs*, either ...
>
> Again, I repeat, we have no busy slip ....
>
> *I told Mr. Berkowitz* last week, I guess before Friday, when this question of a continuance first came up, *that Ms. Harkins must follow the regulations or the case will go on trial.* So, the case is now going to trial. (Emphasis Supplied.)

Obviously, the judge was primarily interested in eliminating the case—*not in doing justice* : even if a "busy slip" would have been filed, it would have been arbitrarily disregarded; he ". . . told Mr. Berkowitz . . ." not Ms. Harkins, the judge all the while being aware of the problems. The only concern of this judicial officer, it would appear, was to get rid of this particular case so that it would be out of the system.

The case went to "trial" and the jury did not consider the defense or the counterclaim.

This case provides an illustration of a myopic *misperception of duty*, too often occurring, both on the part of the court and counsel. Arbitrary and transparent attempts to reduce court congestion at the expense of the very purpose of the judicial institution cannot be tolerated by this Court. We believe there is experience which demonstrates that court efficiency can be achieved and maintained consistent with the highest traditions of due process—no matter how great or small the amount or subject of the controversy.

LARSEN, Justice, dissenting.

The majority sets forth two "critical facts" upon which its resolution of this case turns: 1) that "there was nothing before the trial court on the 19th, when it authorized the *ex parte* trial, establishing that counsel for appellee was aware of the new trial date"; and 2) that "there is nothing to indicate that counsel for appellee sought any unreasonable relief from the pending trial date." At 1168. If the record in this case supported these conclusions, I would join in the majority opinion. However, the majority arrives at its first conclusion only after considering an issue which was not preserved for appellate review or raised by the parties; and improperly considering an affidavit which was not part of the record in the court of common pleas and which the parties never brought to this Court's attention. The majority arrives at its second conclusion by misapplying this Court's decision in *Budget Laundry Company v. Munter*, 450 Pa. 13, 298 A.2d 55 (1972) to the facts of this case. Accordingly, I dissent.

With respect to the first "critical fact," no issue of lack of notice was ever raised by appellee in the trial court, in the Superior Court, or in briefs filed with this Court. Since this issue was never raised, it was not properly preserved for appellate review. *See* Rule 302(a), Pa.R.A.P. ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Piper*, 458 Pa. 307, 328 A.2d 845 (1974) (majority opinion by Roberts, J.).

"We have repeatedly held that where a claim of error is not properly preserved for review, an appellate court must not consider that claim on appeal." *Benson v. Penn Central Transportation Company*, 463 Pa. 37, 41, 342 A.2d 393, 395 (1975) (majority opinion by Roberts, J.) (footnote citing cases omitted). *See also Commonwealth v. Branham*, 467 Pa. 605, 607–08, 359 A.2d 766, 767 (1976).

This Court has also held that appellate courts may not consider issues not presented, but rather should resolve an appeal on the basis of the issues raised by the parties. *Wiegand v. Wiegand*, 461 Pa. 482, 485, 337 A.2d 256, 257–58 (1975) (opinion for unanimous Court by Roberts, J.). *See also Reed v. Sloan*, 475 Pa. 570, 575 n.4, 381 A.2d 421, 423 n.4 (1977).

The majority's raising and consideration of the issue of lack of notice can only be characterized as an unwarranted and unreasoned departure from precedent; I do not, therefore, concur in the majority's treatment of it.

Further, I object to the majority's reliance upon the affidavit of appellant's counsel which was signed in January, 1977, one year after the trial in this case, for the purpose of bolstering its conclusion that Ms. Harkins had no notice of the January 19 trial date.[1] Counsel's affidavit was made

1. That affidavit purports to establish at least one fact upon which the trail court record is silent, namely, the fact that the trial court imposed upon appellant's counsel the duty of notifying opposing counsel of the new trial date of January 19. Since neither party nor the author of the majority opinion has provided the members of this Court with copies of counsel's affidavit, this writer has never actually seen the complete affidavit and has, in the formulation of this

part of appellant's brief before the Superior Court; [2] it was never made part of the record in the trial court, and it was never presented to this Court by either party. The majority has, nevertheless, sought out this affidavit and relied upon it in this appeal, even though such reliance would not be permissible if the *parties* had presented the affidavit directly to this Court.

This Court has discussed its reasons for refusing to consider the contents of a document filed by an appellant initially with this Court on appeal:

The scope of our review on the question under discussion is whether or not the lower court abused its discretion . . . . That issue must be resolved on the basis of the facts before the lower court and in the record upon the date the court rendered its decision. . . . To permit the proposed addition to the record at this late date would be grossly unfair and establish a very dangerous precedent.

*Kilian v. Allegheny County Distributors, Inc.*, 409 Pa. 344, 348–49, 185 A.2d 517, 519 (1962). *See also Commonwealth v. Young*, 456 Pa. 102, 114–15, 317 A.2d 258, 264 (1974) (majority opinion by Roberts, J.); *In re England's Estate*, 414 Pa. 115, 122, 200 A.2d 897, 900–01 (1964) (opinion for unanimous Court by Roberts, J.).

In light of this precedent and for the additional reasons stated in my dissenting opinion in *In re: County Investigating Grand Jury of June 1, 1979, Appeal of Richard Drapczuk*, 495 Pa. 186, at 206–210, 433 A.2d 5, at 15–16, 17 (1981) (Larsen, J., dissenting), I do not join in the majority's willingness to rely upon a factual statement which was not in the trial court record and which neither party ever submitted to this Court.

dissent, relied solely upon those portions of the affidavit quoted in the majority opinion.

2. This Court does not routinely receive copies of trial or intermediate appellate court briefs in connection with pending appeals. Superior Court briefs, if not provided to the members of this Court by the parties, are available only from the Superior Court prothonotary or in the paperbook collections kept in libraries throughout the state.

With respect to the second "critical fact," the majority's conclusion is incredible. The majority opinion shifts the responsibility for Ms. Harkins' absence from trial to both the trial court and opposing counsel. It assumes that appellant's counsel never notified Ms. Harkins that he had replaced appellant's previous counsel, and implies that counsel had an obligation to do so; it disapproves of the trial court's reading of Ms. Harkins' letter of January 14 to opposing counsel; [3] and it misquotes the content of appellee's "exceptions," stating that Ms. Harkins expressed, in one "exception," the belief that an appropriate continuance would be entered. [4]

Yet the responsibility for counsel's absence from trial and for the resulting judgment against appellee must be borne by Ms. Harkins herself, and in this case counsel failed to act responsibly and failed to make a satisfactory excuse for her inability to attend the trial as scheduled known to the court at the earliest possible moment. [5] Ms. Harkins did not read

3. That letter stated that "[t]he main witness for the defense in this matter . . . is now employed out of state and *it will be necessary for me to secure his appearance*, a task which might require *several weeks* notice to him." (Emphasis supplied.) The majority, however, ignores the very language of the letter and concludes in its opinion that while

counsel for appellee did allude to the possibility that it might take "several weeks" for her to obtain the presence of appellee's "main witness," . . . nothing in her correspondence suggested that she sought a continuance that would assure the availability of the witness. To the contrary, counsel for appellee requested a date certain.

At 1168. The trial court interpreted this letter correctly when it determined that Ms. Harkins desired a continuance of several weeks.

4. This "exception" reads:

The Court erred in that despite direct advice from Defendant's counsel to the Court's secretary that Defendant's counsel was on trial in Montgomery County on Friday, January 16, 1976 and that the case may well have been continued onto January 19, 1976, which in fact it was, and despite defense counsel's request for a continuance to a date certain, a judgment was, nevertheless, entered pursuant to a verdict rendered after trial at which no defense evidence or argument was heard.

5. Rule 218, Pa.R.C.P. governs cases like the present one in which one party is not prepared for trial. That rule provides:

the Legal Intelligencer, in which this case was officially noticed on numerous dates. On January 14, when Ms. Harkins learned from opposing counsel, who apparently had no trouble ascertaining the date of trial and proceeding accordingly, that trial was just two days away, she did not follow the procedures listed in the Legal Intelligencer and Rule 216 of the Pennsylvania Rules of Civil Procedure for obtaining a continuance. Ms. Harkins did not place a call to the trial court to warn of the conflict, nor did she telephone opposing counsel to notify him that there was a scheduling problem. Rather, two days before trial, Ms. Hawkins wrote a letter to *opposing counsel*, with only a carbon copy to the court, asking *opposing counsel* to obtain a continuance of several weeks, and then dropped that letter into the U. S. Mail, where it remained for two days until its delivery to the court *after* the scheduled hour for the commencement of trial. It was not until January 16, on the morning of trial, that Ms. Harkins finally telephoned the trial court, after which the trial court continued the case until January 19.

In view of Ms. Harkins' course of conduct, she was fortunate that the trial court granted any continuance. Yet on January 19, when trial was again scheduled to begin and when Ms. Harkins had again failed to appear, the trial judge noted on the record that he had still not heard directly from her.

> When a case is called for trial, if one party is ready and the other is not ready, without satisfactory excuse being made known to the court, ... the plaintiff may proceed to trial, as the case may be
> . . . .
>
> This Court has defined at least one circumstance which constitutes a "satisfactory excuse" within the meaning of Rule 218, and the manner in which that excuse must be made known to the trial court. As a general rule a previous court commitment of an attorney which requires his presence before another tribunal, if made known to the court before which a continuance or an extension is sought, would constitute a "satisfactory excuse" within the meaning of Rule 218. ... However, regardless of the legitimacy of the circumstances which provide the basis for the delay it is to be expected that the conflict should be communicated to the court, before which the continuance is sought, *at the earliest possible moment. See e. g.* Pa.R.C.P. 216(C).
>
> *Dublin Sportswear v. Charlett*, 485 Pa. 633, 638, 403 A.2d 568, 570 (1979) (emphasis added; citations and footnote omitted).

Despite Ms. Harkins' mishandling of this matter, the majority relies upon this Court's decision in *Budget Laundry Company v. Munter, supra,* to justify affirming the order of the Superior Court granting appellee a new trial. *Budget Laundry* applies to parties who have done everything possible, yet have remained unable, to resolve scheduling conflicts. In *Budget Laundry,* this Court required the granting of a continuance to remedy a conflict in one attorney's schedule. That decision was based upon the facts that counsel had informed the court promptly of scheduling conflicts and of the unavailability of substitute counsel, that the requested continuance was only for a period of several days, that opposing counsel did not object to a continuance, and that no prejudice would result from the granting of a continuance.[6] The facts of this case clearly do not come within the requirements of *Budget Laundry,* and the majority's application of that decision to this case only serves to put attorneys on notice that they are no longer bound to follow rules of procedure concerning the scheduling of civil trials.

In view of counsel's repeated failure to appear for trial and to inform the trial court of scheduling conflicts in a timely fashion, I would hold that the trial court in this case did not abuse its discretion, and I would reverse the order of the Superior Court.

6. On January 19, appellant's counsel did state on the record that appellant had incurred "significant expenses" in having two of its witnesses present in court and prepared for trial on both January 16 and January 19.